Mr. Justice James
delivered the opinion of the Court:
This is a petition for a writ of mandamus. The relator’s petition states substantially the following case:
She became postmaster at Emporia, Kansas, on October 1, 1864, and so continued to and including June 30, 1870. During the whole of the biennial term ending June 30, 1866, the returns of the office paid to the United States amounted to $1,567.98, the commissions on which, under the act of *120 June 22, 1854, if allowed, would have amounted to $863.99. The salary allowed for the seven quarters of this period, during which the relator was postmaster, was $580.
During the biennial term ending June 30, 1868, the returns of the office amounted to $2,230.73, besides $73 box rents, commissions upon which, under the said act of 1854, if allowed, would amount to $1,270.37, while relator was paid a salary, for the same period, of $800.
For the biennial term ending June 30, 1870, the returns of the office amounted to $6,312.53, besides $230 box rents, upon which commissions under said act of 1854, if allowed, would amount to $3,139.33; while'the relator was paid a salary, for the same biennial term, of $1,580. *
The petitioner thereupon claims that it became the duty of the Postmaster General, under section 8 of the act of June Í2, 1866, to readjust said salary at the end of each biennial term, because the same was ten per cent, less than it would have been in commissions under said act of 1854, and to allow the difference between the salary paid and said commissions.
The relator further sets forth that, on June 9, 1883, and February 17, 1884, the Postmasters General of those dates issued orders in which they construed the statutes relating to readjustment of salaries; that they caused to be entered upon the forms described in those orders, the sum of $1,-567.98, as the amount of the postal receipts at the relator’s postoffice during the biennial term ending June 30, 1866, and the salary of said office, for the whole of said term, computed on the basis of the act of 1854, as $863.99, and the relator’s proportion thereof, for seven quarters of that term, as $755.99: that they caused to be entered on said forms the sum of $2,230.73, as the amount of relator’s postal receipts for the biennial term ending June 30, 1868, and the sum of $1,270.37, 'as relator’s salary for the same term; and the sum of $6,312.53 as the amount of relator’s postal receipts for the biennial term ending June 30, 1870, and the sum of $3,139.83, as the salary of .the relator for the same *121 term; also that the Postmaster General prepared and transmitted to the Committee on Post Offices and Post Roads a statement of the total amount of the relator’s readjusted salary, due and unpaid, for the whole time between October i, 1864, and June 30, 1870, showing the amount so due the relator to be $2,175.57, .but afterwards withdrew that statement, and an error therein was corrected, and an entry was made showing the correct amount due the relator to be $2,206.19.
The relator states that the Postmaster- General has refused to report to the auditor for the Post Office Department, for credit in the relator’s account, the amount found due upon said statement, and concludes with the following prayer:
“The relator therefore prays that a writ of mandamus may issue from this honorable court addressed to John Wanamaker, Postmaster General, commanding him to report to the Auditor of the Treasury for the Post Office Department, that upon an examination of the relator’s quarterly returns as postmaster at Emporia, Kansas, during her terms of service between October 1, 1864, and June 30, 1870, and a recomputation of her salary as required by section 8 of the act of June 12, 1886, and the act of March 3, 1883, it is found that the additional salary $2,206.19 is due her, of which she is entitled to be credited in her account.”
To this petition the respondent demurred. The case was certified to this court, to be heard here in the first instance, and a rule to show cause was issued.
In order to determine the validity of the relator’s claim, we must consider the acts of June 22, 1854, of July 1, 1864, of June 12, 1866, and of March 3, 1883.
The act of June 22, 1854, provided that postmasters should be compensated by commissions -on the amount of postal receipts at their respective postoffices, varying in percentage to the extent .of the receipts. The act of July 1, 1864, established five classes of postmasters. To the first class were assigned those whose salaries, as determined by the rule laid down in another part of the act, should be not *122 less than $3,000 nor more than $4,000; to the second those whose salaries should be not less than $2,000 nor more than $3,000; to the third, those whose salaries should be not less than $1,000 nor more than $2,000; to the fourth, those whose salaries should be not less -than $100 nor more than $1,000; and to the fifth, those whose salaries should be less than $100. The rule by which the salary of a particular postmaster should be determined was provided as follows: “To offices of the first, second, and third classes shall be assigned salaries, in even hundreds of dollars,. as near as practically in amount the same as, but not exceeding the- average compensation of the postmasters thereof for the two years next preceding; and the offices of the fourth class shall be assigned severally salaries, in even tens of dollars, as near as practicable in amount the same as, but not exceeding, such average compensation for the two years next preceding,” etc.
The time,when the salary system shall take effect was provided by the 3d section of the act as follows: “Salaries of the first, second and third classes should be adjusted to take effect on the first day of July, 1864, and of the fourth and fifth classes at the same time, or at the commencement of a quarter as nearly as practicable thereafter.”
The next preceding section (2) provided the readjustment of salaries in the following words:
“ The Postmaster General shall review once in two years and in special cases, upon satisfactory representation, as much oftener as he may deem expedient, and readjust, on the basis of the preceding section (namely, Sec. 1) the salary assigned by him to any office; but any change made in such salary shall not take effect until the first day of the quarter next follotving such order, and all orders made' assigning or changing salaries shall be made in writing and in his journal and notified to the Auditor of the Post 'Office Department.”
The effect of sections .2 and .3 was that the biennial terms should date from July 1, 1864. By this reference to “the basis of the preceding section,” (namely, section 2) it was required that the readjusted salary should be “ as .near as *123 practicable in amount the Same as, but not exceeding,” the average compensation, by commission on postal receipts, for the two years next preceding the order of readjustment. For example, in case of readjustment of the salary which had been allowed for the term ending June 30, 1866, the postal receipts for that term would be the basis of computation, and then the salary so ascertained would, as provided by section 2, apply to the term ending June 30, 1868.
We come now to the statute on which chiefly the relator’s claim is founded by her. Section 8 of the act of June 12, 1866, enacted that the second section of the act of 1864 should be amended by adding the following words: “ Provided, that when the quarterly returns of any postmaster of the third, fourth, or fifth class show that the salary allowed is 10 per centum less than it would be on a basis of commission under the act of 1854, fixing compensation, the Postmaster General shall review and readjust under the provisions of said section.” This, of course, meant the provisions of section 2 of the act of July x, 1864, which referred to section 1 of the same act.
The relator construes this amendment as intending that, whenever a deficiency of 10 per cent, is found to have occurred in an allowance of salary, that deficiency shall be made up to him as further compensation for the past biennial term in which the deficiency was developed. Her petition contains the following allegation, or rather claim: “That it became the duty of the Postmaster General, under section 8, act June 12, 1866; to readjust said salary at the end of each biennial term, because the said salary was 10 per cent, less than it would have been under said act of 1854, and to allow her the difference between the salary paid and said commissions.” We understand the relator’s contention to be, that this process of supplying the deficiency is to be applied to the biennial terms from June 30, 1864, to June 30, 1870.
We do not so construe the act of 1866. We hold that it merely defines the occasion which shall make imperative a readjustment of the salary to be paid after that date. From *124 that 'time the occasion for readjustment was to be the ascertained fact that the salary for the biennial term just ended had been io per cent, less than compensation by commissions would have been. In the absence of clear indications to the contrary, every statute is prospective, and this amendment shows as little indication of a contrary intent as did the section which it amended. It is to be observed that this act was passed nearly three weeks before the biennial readjustment of June 30 was to be made. It determined, therefore, the occasion, the state of facts, which should require a readjustment of salary for the biennial term from June 30, 1866, to June 30, 1868, and for succeeding biennial terms. The basis of readjustment remained meantime just what it had been'before. In express terms the act of 1866 declared that the readjustment, in these cases of 10 per cent, of difference between the allowed salary and the commissions standard, should be made under the provisions of section 2 of the act of July 1, 1864; and one of those provisions was, that the readjustment should apply only to the salary for the term next following the order of readjustment. The only effect, therefore, of the amendment was to determine the occasion or state of facts which should justify any readjustment. The important point, however, is, that the act of 1866 was a strictly prospective statute, and had reference only to the salaries to be allowed to the imcumbents of the several postoffices after that time. It did not intend to operate on salaries which had been allowed for terms which had expired.
We have next to consider the effect of the act of March 3, 1883. That statute was in the following words: “That the Postmaster General be, and he is hereby, authorized and directed to readjust the salaries of all postmasters and late postmasters of the third, fourth and fifth classes under the classification provided in the act of July 1, 1864, whose salaries have not heretofore been readjusted under the terms of section 8 of the act of June 12, 1866, who made sworn returns of receipts and business for readjustment of salary to the Postmaster General, the First Assistant Postmaster *125 General, or the Third Assistant Postmaster General, or who made quarterly returns in conformity to the then existing laws and regulations, showing that the salary allowed was 10 per centum less than it would have been upon the basis of commissions under the act of 1854; such readjustment to be made in accordance with the mode presented in section 8 of the act of June 12, 1866, and to date from the beginning of the quarter succeeding that in which such sworn returns of receipts and business returns were made.”
Note. — This case went to the Supreme Court of the United States on writ of error, and was dismissed for want of jurisdiction. (147 U. S., 149). — Reporters.
In this statute Congress, for the first time, provided for readjustment of salaries for terms which had expired; and in this proceeding the cases of late as well as incumbent postmasters were to be included. But it is to be observed that this act refers only to a readjustment of salaries under the act of 1866. We think it is clear that it was not intended to operate upon a salary for any biennial term not included in the operation of that act; and we have already held that the act of 1866 was only prospective. The act of 1883 did not propose to alter the scope of the act of 1866; it proposed only to enforce its application to salaries which had not theretofore been readjusted. It follows that salaries for the term from June 30, 1864, to June 30, 1866, could not be readjusted under this statute.
The prayer, therefore, for a writ of commanding the Postmaster-General, “upon an examination of the relator’s returns during her terms of service between October 1, 1864, and June 30, 1870, to report 'to the Auditor of the Treasury for the Post Office Department that it is found that the additional salary $2,206.29 is due her, for which she is entitled to be credited in her account,” cannot be granted.
Some other questions were discussed at the argument, but it is unnecessary to decide them on this demurrer.

The writ is denied.